```
___ FILED      ___ ENTERED
___ LODGED     ___ RECEIVED

        JUL 29 2015
           AT SEATTLE
     CLERK U.S. DISTRICT COURT
  WESTERN DISTRICT OF WASHINGTON
BY                         DEPUTY
```

The Honorable Mary Alice Theiler

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

UNITED STATES OF AMERICA,

    Plaintiff,

v.

BRUCE LORENTE,

    Defendant.

NO. MJ15-341

COMPLAINT FOR VIOLATION

18 U.S.C. § 2252(a)(2).

BEFORE the Honorable Mary Alice Theiler, United States Magistrate Judge, U. S. Courthouse, Seattle, Washington.

## COUNT 1
### (Receipt of Child Pornography)

On a date unknown, but no later than July 27, 2015, at Seattle, within the Western District of Washington, and elsewhere, BRUCE LORENTE did knowingly receive, and attempt to receive, visual depictions the production of which involved the use of minors engaging in sexually explicit conduct, and the visual depictions were of such conduct, using any means and facility of interstate and foreign commerce and which images had

COMPLAINT/*United States v. Lorente* - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

been mailed and shipped and transported in and affecting interstate and foreign commerce by any means, including by computer.

All in violation of Title 18, United States Code, Sections 2252(a)(2) and (b)(1).

And the complainant states that this Complaint is based on the following information:

I, Caryn J. Highley, having been duly sworn, state as follows:

## I. INTRODUCTION

1. I have been employed as a Special Agent of the FBI since August 2014, and am currently assigned to the Seattle Division. While employed by the FBI, I have investigated federal criminal violations related to high technology or cybercrime, child exploitation, and child pornography. I have gained experience through training at the FBI Academy and everyday work relating to conducting these types of investigations. I have received training in the area of child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media.

2. The facts set forth in this Complaint are based on the following: my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of witnesses; my review of records related to this investigation; communications with others who have knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of a Complaint, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## II. SUMMMARY OF INVESTIGATION

3. "Website A" operated on a network ("the Network") available to Internet users who are aware of its existence. The Network is designed specifically to facilitate anonymous communication over the Internet. In order to access the Network, a user must install computer software that is publicly available, either by downloading software to the user's existing web browser, downloading free software available from the Network's administrators, or downloading a publicly-available third-party application. Using the Network prevents someone attempting to monitor an Internet connection from learning what sites a user visits and prevents the sites the user visits from learning the user's physical location. Because of the way the Network routes communication through other computers, traditional IP identification techniques are not viable.

4. Websites that are accessible only to users within the Network can be set up within the Network and "Website A" was one such website. Website A" was a child pornography bulletin board and website dedicated to the advertisement and distribution of child pornography and the discussion of matters pertinent to the sexual abuse of children, including the safety and security of individuals who seek to sexually exploit children online. Accordingly, "Website A" could not generally be accessed through the traditional Internet. Only a user who had installed the appropriate software on the user's computer could access "Website A." Even after connecting to the Network, however, a user had to know the exact web address of "Website A" in order to access it. Websites on the Network are not indexed in the same way as websites on the traditional Internet. Accordingly, unlike on the traditional Internet, a user could not simply perform a Google search for the name of "Website A," obtain the web address for "Website A," and click on a link to navigate to "Website A." Rather, a user had to have obtained the web address for "Website A" directly from another source, such as other users of "Website A," or from online postings describing both the sort of content available on "Website A" and its location. Accessing "Website A" therefore required numerous affirmative steps

by the user, making it extremely unlikely that any user could have simply stumbled upon "Website A" without first understanding its content and knowing that its primary purpose was to advertise and distribute child pornography.

5.  The Network's software protects users' privacy online by bouncing their communications around a distributed network of relay computers run by volunteers all around the world, thereby masking the user's actual IP address which could otherwise be used to identify a user.

6.  The Network also makes it possible for users to hide their locations while offering various kinds of services, such as web publishing, forum/website hosting, or an instant messaging server. Within the Network itself, entire websites can be set up which operate the same as regular public websites with one critical exception - the IP address for the web server is hidden and instead is replaced with a Network-based web address. A user can only reach such sites if the user is using the Network client and operating in the Network. Because neither a user nor law enforcement can identify the actual IP address of the web server, it is not possible to determine through public lookups where the computer that hosts the website is located. Accordingly, it is not possible to obtain data detailing the activities of the users from the website server through public lookups.

7.  According to data obtained from logs on "Website A," pursuant to the investigation, a user with the user name "Jimbox" engaged in the following activity on "Website A."

8.  The profile page of user "Jimbox" indicated that this user originally registered an account on "Website A" on November 1, 2014. Profile information on "Website A" may include contact information and other information that is supplied by the user. It also contains information about that user's participation on the site, including statistical information about the user's posts to the site and a categorization of those posts. According to the user "Jimbox's" profile, this user was a "Newbie Member" of "Website A." Further, according to the Statistics section of this user's profile, the user

"Jimbox" had been actively logged into the website for a total of 24 hours between the dates of November 1, 2014, and February 24, 2015. "Jimbox" registered to "Website A" using email address jonesbones448@yahoo.com. The user "Jimbox" viewed a total of 61 threads on Website A.

9. The user "Jimbox" accessed 61 threads that included titles such as "A GIRL NAMED ALICIA 3yo or 4yo", "Andea 11yo girl - Adry 10yo girl + Little Girl 4yo Suck Hard!", "6yo Dana BJ-CS 1920x1080FULL-HD(16.9)blojob-W-taste-of-cum", "9y Beautiful Preteen ~ First Anal Sex + Creampie", and "8yo blonde sucking cock". Most of the threads "Jimbox" accessed contained links to images and/or videos of child pornography.

10. During the following session, the user "Jimbox" also browsed "Website A" after logging into "Website A" with a username and password. During this session, the user's IP address information was not collected.

On February 23, 2015, "Jimbox" viewed a thread titled "New Tropical Cutie Vid [tc2/2]." The post contained a preview image, known as a contact sheet with 16 images on it. The images depicted what appeared to be a prepubescent girl participating in oral sex with an adult male's erect penis.

11. Using publicly available websites, FBI Special Agents were able to determine that the above IP Address was operated by the Internet Service Provider ("ISP") Clear Wireless, a subsidiary of Sprint.

12. In March 2015, an administrative subpoena was served to Sprint requesting information related to the user who was assigned to the above IP address. According to the information received from Sprint, BRUCE LORENTE received Internet service at 1641 Bellevue Ave, Apt 312, Seattle, WA 98122, with an installation date of December 4, 2012. Internet service was current as of March 23, 2015 at the aforementioned premises. In April 2015, an administrative subpoena was served to Yahoo for email address jonesbones448@yahoo.com. According to the information provided by Yahoo

that email account is registered to Mr. Jeff Jones in the United States with Zip Code 98136. The account was created May 25, 2010. On November 23, 2014, the account was accessed on three occasions from IP address 184.78.129.189, the same address utilized by "Jimbox" on "Website A."

13. A search of CLEAR information database (a public records database that provides names, dates of birth, addresses, associates, telephone numbers, email addresses, etc.) was conducted for BRUCE LORENTE. These public records indicated that LORENTE's current address is the 1641 Bellevue Ave, Apt 312, Seattle, address. The records also indicated BRUCE LORENTE lived at an address utilizing Zip Code 98136 in approximately 2008, the same Zip Code associated with the Yahoo email address.

14. On July 27, 2015, I obtained a Federal search warrant for the 1641 Bellevue Ave, Apt 312, Seattle, address from United States Magistrate Judge Mary Alice Theiler.

15. On July 28, 2015, the Federal search warrant was executed by FBI special agents at 1641 Bellevue Ave, Apt 312, Seattle, WA 98122. During the search, BRUCE LORENTE, the sole occupant of apartment 312, was interviewed on site by FBI Agents. After being Mirandized, BRUCE LORENTE stated that he had viewed and downloaded thousands of images of child pornography onto devices in his residence. He stated his most recent download was approximately two days ago. BRUCE LORENTE told agents he used an anonymizing network to access and download those images. When asked what BRUCE LORENTE believed "child pornography" to be, he said he understood it to be individuals under the age of 18 engaging in sexual acts.

16. BRUCE LORENTE voluntarily agreed to come to the FBI Seattle Field Office and take a polygraph concerning his activities related to child pornography. During the polygraph, BRUCE LORENTE made statements that he has been viewing child pornography images for approximately 15 years and the last time he viewed an image was the prior day or so. BRUCE LORENTE further stated that he viewed child pornography at least once per day using the laptops in his residence. BRUCE

1  LORENTE also indicated that he prefers to view images of female children from the ages
2  of 8 to 12 years of age. BRUCE LORENTE admitted to taking photographs of children
3  in his neighborhood at a car wash that he estimated to be approximately 10 years old, and
4  he stored those images on a digital device.
5       17.    After the search was concluded, items seized were brought back to the FBI
6  Seattle Office for a forensic preview. During the initial review, numerous folders
7  containing child erotica and child pornography were discovered on a Western Digital
8  external hard drive. Below are two examples of images contained on the hard drive that I
9  have reviewed:

   An image titled 174471.jpg depicting a juvenile female approximately 2 to 8 years
   old, based upon the lack of genital development, lack of pubic hair, and overall
   body size. The image is a close up of the vaginal area of the juvenile female with
   adult hands spreading apart the labia and an adult male penis partially inserted into
   the vaginal opening.

   An image titled HjY5SVaXp1.jpg depicting a juvenile female approximately 9 to
   12 years old, based upon the lack of hip development, lack of breast development,
   lack of pubic hair, overall body size, and facial features. The juvenile female is
   lying on her back on a couch with her legs spread to expose her vaginal and anal
   areas with her knees by her shoulders. There is an adult male kneeling in front of
   her with his hands on her thighs, and his face near her genitals.

## CONCLUSION

18. Based on the above facts, I respectfully submit that there is probable cause to believe that BRUCE LORENTE did knowingly and unlawfully receive child pornography, in violation of Title 18, United States Code, Section 2252(a)(2).

*[Signature]*
Caryn Highley, Complainant
Special Agent, FBI

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the Defendant committed the offense set forth in the Complaint.

Dated this 29 day of July, 2015.

*[Signature]*
MARY ALICE THEILER
United States Magistrate Judge